## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCHENKER, INC. | Civ. No. |
| Plaintiff, | **NOTICE OF REMOVAL** |
| vs. | |
| AMERICAN BLAST SYSTEMS, INC., | |
| Defendant. | |

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that defendant, American Blast Systems, Inc. ("ABS"), by and through its undersigned attorneys,  hereby removes this action from the Supreme Court of the State of New York, County of Nassau, to this Court pursuant to 28 U.S.C. §§ 1441, 1446 and 1332(a), on the following grounds:

### THE COMPLAINT

1.      On October 9, 2020, plaintiff commenced an action in the Supreme Court of the State of New York, Nassau County, captioned *Schenker, Inc. v. American Blast Systems, Inc.*, Index No. 611040/2020 ("the state court action").  Pursuant to 28 U.S.C. § 1446(a), a copy of the Summons and (the "Complaint") in that action is attached hereto as Exhibit A.

2.      The Summons and Complaint assert claims again ABS for alleged breach of contract; allege *quantum meruit*; and alleged attorney's fees pursuant to contract.  Exhibit A, ¶¶ 18-3.

3.      On October 25, 2020, ABS was purportedly served with a copy of the Summons and Complaint.

4.      ABS has not made any filings in the state court action.

## THE PARTIES AND DIVERSITY

5.      Defendant ABS is a corporation organized and existing under the laws of the State of California with its principal place of business located at 3101 Villa Way Newport Beach, California, 92663.

6.      The Complaint alleges that plaintiff was and is a domestic business corporation organized and existing under the laws of the State of New York, with an address and place of business at 41 Pinelawn Rd., Melville, New York 11747 in the County of Nassau.  Exhibit A ¶4.

7.      As a result, the parties are completely diverse pursuant to 28 U.S.C § 1332(a).

## AMOUNT IN CONTROVERSY

8.      Diversity jurisdiction under 28 U.S.C. § 1332 also requires that the amount in controversy, exclusive of interest and costs, be in excess of $75,000.

9.      Here the Complaint demands "no less than $50,189.06 plus attorney's fees" in damages as to the first cause of action; "no less than $50,189.06 plus attorney's fees" in damages as to the second cause of action; and unspecified damages as to the third cause of action. Exhibit A ¶¶ 22, 28, 31, and prayer for relief.

10.     The first and second causes of action are not pled in the alternative and as such, on its face, the Complaint demands at least $100,378.12 in damages in addition to attorney's fees on the first and second causes of action as well as the unspecified damages demanded under the third cause of action.

11.     Additionally, even if the first cause of action (breach of contract) and the second cause of action (*quantum meruit*) of the Complaint are read in the alternative, the Complaint may

still be read as presenting an amount in controversy in excess of $75,000 when considering the third cause of action (attorney's fees pursuant to contract).

## **REMOVAL**

12.     This is a civil action that may be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441 *et seq.,* because there exists diversity of citizenship between plaintiff and defendant, on the face of the Complaint the amount in controversy appears to exceed the sum of $75,000.00, exclusive of interest and costs, and, thus, there is currently original jurisdiction in the District Courts of the United States, as provided in 28 U.S.C. § 1332.

13.     ABS is the only defendant in the action and, therefore, no other entity must join in this Notice of Removal.

14.     In accordance with the requirements of 28 U.S.C. § 1446, this petition for removal is filed within 30 days after service of the summons and complaint on defendant.

15.     Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon defendant (consisting of the Summons and Complaint) are annexed hereto as Exhibit A.

16.     Pursuant to 28 U.S.C. § 1446(d),  ABS will promptly serve written notice of the removal of this action upon plaintiff, the only adverse party, and will file such notice with the Clerk of the Supreme Court of the State of New York, County of New York.

17.     This Notice of Removal is being filed in the United States District Court for the Eastern District of New York, the district and division in which the case is pending.

WHEREFORE, ABS requests that this action be removed from the Supreme Court of the State of New York, Nassau County, to the United States District Court for the Eastern District of New York.

Dated: New York, New York
November 24, 2020

Respectfully Submitted,

BARCLAY DAMON LLP

By:   /s/ Robert K. Gross
Robert K, Gross

1270 Avenue of the Americas, Suite 501
New York, New York
(212) 784-5800 (phone)
(212) 784-5774 (fax)

Email: rgross@barclaydamon.com

*Attorneys for American Blast Systems, Inc.*

# EXHIBIT A

FILED: NASSAU COUNTY CLERK 10/09/2020 10:56 AM

NYSCEF DOC. NO. 1

INDEX NO. 611040/2020

RECEIVED NYSCEF: 10/09/2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF   Nassau

| | |
|---|---|
| SCHENKER, INC. | |
| Plaintiff(s), | |
| -against- | |
| AMERICAN BLAST SYSTEMS, INC. | |
| Defendant(s). | |

Index No.   611040/2020

𝔖𝔲𝔪𝔪𝔬𝔫𝔰

Date Index No. Purchased:   10/9/2020

To the above named Defendant(s)

AMERICAN BLAST SYSTEMS, INC.
3101 Villa Way Newport Beach,
California, 92663

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis of venue is   Plaintiff's residence
which is   41 Pinelawn Rd, Melville, New York 11747

Dated:   New York, New York

October 9, 2020

Nicoletti Hornig & Sweeney

by___s/ Nooshin Namazi_____

Nooshin Namazi

Attorneys for Plaintiff

Plaintiff Schenker, Inc.
88 Pine Street, 7th floor
New York, New York 10005
212 220 3830
nnamazi@nicolettihornig.com

FILED: NASSAU COUNTY CLERK 10/09/2020 10:56 AM

NYSCEF DOC. NO. 1

INDEX NO. 611040/2020

RECEIVED NYSCEF: 10/09/2020

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NASSAU**

---------------------------------------------------------X

SCHENKER, INC.,
                             Plaintiff,

     – against –

AMERICAN BLAST SYSTEMS, INC.

                           Defendant.

---------------------------------------------------------X

**Index No.:** 611040/2020

**COMPLAINT**

Plaintiff, Schenker, Inc. ("Schenker"), by its undersigned attorneys, with this Complaint against American Blast Systems, Inc. ("ABS") respectfully shows this Honorable Court and alleges upon information and belief as follows:

### JURISDICTION AND VENUE

1.     The Court has proper jurisdiction over this matter pursuant to the forum selection clause in Schenker's General Terms and Conditions of Service, which is incorporated by reference in all of Schenker's invoices, and venue is proper in the Supreme Court, County of Nassau, based on Schenker's residence in Melville, New York.

2.     Schenker's Terms and Conditions of Service provide, among other terms, the following:

> 26. Construction of Terms and Venue. These terms and conditions of service shall be construed according to the laws of the State of New York, without giving consideration to principles of conflict of law. The Company and the Customer (a) agree that any legal proceeding relating to the services performed by the Company shall be brought only in a court of competent jurisdiction in the State of New York, and (b) irrevocably consent to the jurisdiction of any such court in New York State.

Attached hereto as Exhibit "1" is a true and authentic copy of Schenker's Terms and Conditions of Service.

3.      The New York forum selection clause is also included in the terms and conditions of service on the back of each Customs Power of Attorney.

## GENERAL ALLEGATIONS

4.      Schenker at and during all times hereinafter mentioned was and is a domestic business corporation organized and existing under the laws of the State of New York, with an address and place of business at 41 Pinelawn Rd, Melville, New York 11747 in the County of Nassau.

5.      At and during all the times hereinafter mentioned, ABS was a legal entity capable of being sued in this Court. At and during all the times hereinafter mentioned, ABS manufactured and sold arms products and was engaged in business as a shipper, importer and/or merchant, with an address and place of business located at 3101 Villa Way Newport Beach, California, 92663.

*Shipment No. 1*

6.      In November 2017, at ABS's request and instruction, Schenker arranged, brokered and/or coordinated the customs brokerage, ocean transportation and cross-docking transportation of container MRKU3267648 loaded with glassware from Dublin to Los Angeles.

7.      On November 15, 2017, Schenker invoiced ABS in the amount of $11,709.54 for the performance of the aforementioned transportation services. Attached hereto as Exhibit "2" is a true and authentic copy of Schenker Invoice No. 200866199.

8.      Despite multiple demands by Schenker, ABS has not paid Schenker for its transportation services.

2

FILED: NASSAU COUNTY CLERK 10/09/2020 10:56 AM

NYSCEF DOC. NO. 1

INDEX NO. 611040/2020

RECEIVED NYSCEF: 10/09/2020

*Shipment No. 2*

9.      In November 2017, at ABS's request and instruction, Schenker arranged, brokered and/or coordinated the customs brokerage, air transportation and inland transportation of a shipment of ballistic window frames from Belfast to Los Angeles.

10.     On November 10, 2017, Schenker invoiced ABS in the amount of $29,005.35 for the performance of the aforementioned transportation services. Attached hereto as Exhibit "3" is a true and authentic copy of Schenker Invoice No. 2610925594.

11.     Despite multiple demands by Schenker, ABS has not paid Schenker for its transportation services.

*Shipment No. 3*

12.     In October 2017, at ABS's request and instruction, Schenker arranged, brokered and/or coordinated the customs brokerage, air transportation and inland transportation of a shipment of TGH Sunguards from Dublin to Virginia Beach, Virginia.

13.     On November 2, 2017, Schenker invoiced ABS in the amount of $9,224.17 for the performance of the aforementioned transportation services. Attached hereto as Exhibit "4" is a true and authentic copy of Schenker Invoice No. 2610923652.

14.     Despite multiple demands by Schenker, ABS has not paid Schenker for its transportation services.

*Continuous Bond Invoice*

15.     On December 6, 2017, Schenker invoiced ABS in the amount of $250.00 for the continuous bond fee. Attached hereto as Exhibit "5" is a true and authentic copy of Schenker Invoice No. 2030034230.

3

16.     Despite multiple demands by Schenker, ABS has not paid Schenker for its services.

17.     In total, Schenker invoiced ABS $50,189.06 for transportation related services, which ABS has failed to pay.

**AS AND FOR PLAINTIFF'S
FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT**

18.     Schenker incorporates by reference paragraphs "1" through "17" of this Complaint as if herein stated in full.

19.     This is a case of Plaintiff's loss resulting from the breach by the Defendant of its contractual duties as a party to the invoices, waybills and other contracts with respect to various shipments.

20.     Schenker has fully performed its obligations under all applicable invoices, waybills and/or contracts and ABS has not.

21.     There is a balance of $50,189.06 due from ABS for Schenker's services, which has not been paid despite demands made therefor.  ABS refuses and continues to refuse to compensate Schenker for the balance due.

22.     As a proximate result of said breaches and refusals, Schenker has been damaged in an amount no less than $50,189.06 plus attorney's fees to the extent they are provided for by the applicable invoices, waybills, bills of lading, and/or contracts and law, along with interest at the legal rate.

4

FILED: NASSAU COUNTY CLERK 10/09/2020 10:56 AM
INDEX NO. 611040/2020
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 10/09/2020

## AS AND FOR PLAINTIFF'S
### SECOND CAUSE OF ACTION FOR QUANTUM MERUIT

23.     Schenker incorporates by reference paragraphs "1" through "17" of this Complaint as if herein stated in full.

24.     Schenker rendered the services, outlined above and incorporated herein, for compensation and for the benefit of ABS and as requested and authorized by ABS.

25.     ABS has benefited from Schenker's services and advances of ancillary sums and charges for its shipments.

26.     Schenker has not been compensated by ABS for its services and advances with respect to the shipments at issue in this Complaint and as set forth above.

27.     The fair and reasonable value of the services Schenker provided to ABS for which it has not been compensated is at least $50,189.06.

28.     ABS's failure to pay Schenker has damaged Schenker in an amount equal to the reasonable compensation for Schenker's services made on behalf of ABS in an amount as near as can now be estimated of no less than $50,189.06, plus interest and attorney's fees to the extent they are provided for by the applicable invoices, waybills, bills of lading, and/or contracts and law, along with interest at the legal rate.

### AS AND FOR PLAINTIFF'S THIRD CAUSE OF ACTION
### FOR ATTORNEY'S FEES, COSTS AND DISBURSEMENTS

29.     SCHENKER incorporates by reference paragraphs "1" through "28" of this Complaint as if herein stated in full.

30.     Paragraph 16 of the General Terms & Conditions of Service contained on the back of the Schenker's invoices provides:

16. Compensation of Company.

5

FILED: NASSAU COUNTY CLERK 10/09/2020 10:56 AM

NYSCEF DOC. NO. 1

INDEX NO. 611040/2020

RECEIVED NYSCEF: 10/09/2020

\*\*\*

In any referral for collection or action against the Customer for monies due to the Company, including but not limited to any action for the enforcement of any provision of the Master Customs Power of Attorney between the Customer and the Company, upon recovery by the Company, the Customer shall pay the expenses of collection and/or litigation, including a reasonable attorneys' fees, costs and expenses.

*See* Exhibit "1."

Similarly, the Customs Power of Attorneys' Terms and Conditions of Service provides that Schenker is entitled to recover its reasonable attorneys' fees.

31.     Accordingly, Schenker is entitled to an award in this action of reasonable attorney's fees and court costs.

**WHEREFORE**, Schenker requests judgment against Defendant ABS for the following:

(i)     Compensatory damages in the amount not less than $50,189.06 with interest at the legal rate of 9% per year on such amount on the first cause of action;

(ii)     Compensatory damages in the amount not less than $50,189.06 with interest at the legal rate of 9% per year on such amount on the second cause of action;

(iii)     Attorney's fees in an amount determined by the Court to be reasonable, as authorized by the contract on the third cause of action;

(iv)     Costs and disbursements incurred in this action; and

(v)     Such other and further relief as the Court deems just and proper.

6

FILED: NASSAU COUNTY CLERK 10/09/2020 10:56 AM

NYSCEF DOC. NO. 1

INDEX NO. 611040/2020

RECEIVED NYSCEF: 10/09/2020

Dated: New York, New York
        October 9, 2020

Respectfully submitted,

NICOLETTI HORNIG & SWEENEY
*Attorneys for Schenker, Inc.*

By: */s/ Nooshin Namazi*
Nooshin Namazi, Esq.
Val Wamser, Esq.
Wall Street Plaza
88 Pine Street, Seventh Floor
New York, New York 10005
Telephone: 212-220-3830
Facsimile: 212-220-3780
Email: nnamazi@NicolettiHornig.com
(Our File No.: 20000266)

7

FILED: NASSAU COUNTY CLERK 10/08/2020 10:56 AM   INDEX NO. 611040/2020

TERMS AND CONDITIONS OF SERVICE

INDEX NO. 611040/2020

all persons performed by the legal entity named on the front of this document (hereinafter called the "Company") for the Customer, which term shall include the person/persons for which services are performed, its Agents and/or Representatives; including, but not limited to, shippers, exporters, importers, brokers, owners, consignors, consignees, carriers, secured parties, warehousemen, insurers and underwriters, transferors or transferees of shipments and/or to be handled by the Company on the following terms and conditions:

1. Application of Terms and Conditions. Company and Customer agree that these terms and conditions of service constitute a legally binding contract. Customer acknowledges that the terms and conditions of the Company's standard international air waybill, ocean bill of lading, warehouse terms and conditions, master customs power of attorney and is currently effective tariffs are hereby incorporated by reference. The Customer acknowledges and agrees that it is responsible to provide notice and a copy of these terms and conditions to all of its agents or representatives.

2. Standing of Company. The Company acts as an independent contractor, except with respect to the performance of the following services where Company acts as an "agent" of Customer: entry and release of goods; post entry services; the securing of export licenses; export documentation filing for the Customer; other dealings with government agencies or behalf of Company.

3. Services by Third Parties. Unless the Company carries, stores, or otherwise physically handles the shipment, and loss, damage, expense or delay occurs during such activity, the Company assumes no liability as a carrier and shall not be held responsible for any loss, damage, expense or delay to the goods to be forwarded or imported except as provided in paragraph 10 and subject to the limitations of paragraph 11 below, but undertakes only to use reasonable care in the selection of carriers, truckmen, lightermen, forwarders, customs brokers, agents, warehousemen and others to whom it may entrust the goods for transportation, cartage, handling and/or delivery and/or storage or otherwise. When the Company carries, stores or otherwise physically handles the shipment, it does so subject to the limitation of liability set forth in paragraph 10 below unless a separate bill of lading, air waybill or other contract is issued by the Company, in which event the terms thereof shall govern.

4. Liability Limitations of Third Parties. The Company is authorized to select and engage carriers, truckers, lightermen, forwarders, customs brokers, agents, warehousemen and others, as required, to transport, store, deal with and deliver the goods, all of whom shall be considered as the agents of the Customer, and the goods may be entrusted to such agencies subject to all conditions as to limitation of liability for forwarders, customs brokers, agents, warehousemen and others. The Company shall under no circumstances be liable for any loss, damage, expense or delay to the goods for any reason whatsoever when said goods are in custody, possession or control of third parties selected by the Company to forward, enter and clear, transport or render other services with respect to such goods. In the event that a person or entity hired by Company is determined to be the agent of the Company, the agent's liability is ascertained according to the provisions of these terms and conditions, particularly as set forth in paragraphs 10 and 11 below, as if they were a party hereto.

5. Choosing Routes or Agents. Unless express instructions in writing are received from the Customer and accepted by the Company, the Company has complete freedom in choosing the means, route and procedure to be followed in the handling, transportation and delivery of the goods.

6. Quotations Not Binding. Quotations as to fees, rates of duty, freight charges, insurance fees or other charges given by the Company to the Customer are for informational purposes only and are subject to change without notice and shall not under any circumstances be binding upon the Company unless the Company in writing specifically undertakes the handling or transportation of the shipment at a specific rate.

7. Duty to Furnish Information (a) On an import shipment at a reasonable time prior to entering of the goods through U.S. Customs, the Customer shall furnish to the Company invoices in proper form and other documents necessary or useful in the preparation of the U.S. Customs entry and also, such further information as may be sufficient to permit the documentation and information to be entered to such, insurance, the dutiable value, the classification, the country of origin, quantity, weight, admissibility and the genuineness of the merchandise and any mark or symbol associated with it, and the Customer's right to import and/or distribute the merchandise, pursuant to U.S. law or regulation. If the Customer fails to furnish in a timely manner such information or documents, in whole or in part, as may be required to complete U.S. Customs entry or comply with U.S. laws or regulations or if the information or documents furnished are inaccurate, incomplete, or otherwise insufficient, the Company shall be obligated only to use the best judgment in connection with the shipment and in no instance shall be charged with knowledge by the Customer of the true circumstances to which such inaccurate, incomplete, omitted or otherwise insufficient information or document pertains. Where a bond is required by U.S. Customs to be given for the production of any document or the performance of any act, the Customer shall be deemed bound by the term of the bond notwithstanding the fact that the bond has been executed by the Company as principal, it being understood that the Company entered into such understanding at the instance and on behalf of the Customer, and the Customer shall indemnify and hold the Company harmless for the consequences of any breach of the terms of the bond. On an export shipment, at a reasonable time prior to exportation of the shipment, the Customer shall furnish to the Company the commercial invoice in proper form and number, a proper consular declaration, weights, measures, values and other information in the language of and as may be required by the laws and regulations of the U.S. and the country of destination of the goods. (c) On an export or import shipment, the Company shall not in any way be responsible or liable for increased duty, penalty, fine or expense unless, caused by the negligence or other fault of the Company, in which event any liability of the Customer shall be governed by the provisions of these terms. The Customer shall be bound by and warrant the accuracy of all invoices, documents and information furnished to the company by the Customer or its agent for export, entry or other purposes and the Customer agrees to indemnify and hold the Company harmless against any increased duty, penalty, fine or expense resulting from the Company's reliance on the accuracy of any incomplete statement, omission or any failure to make timely presentation of required invoices, documents and information, even if not due to any negligence of the Customer.

8. Declaring Higher Valuation. Inasmuch as the truckers, carriers, warehousemen and others to whom the goods are entrusted collectively, the "Third Parties") usually limit their liability for loss or damage unless a higher value is declared and the charge based on such higher value is agreed to by any such Third Party, unless the Company receives specific written instructions from the Customer to pay such higher charges based on valuation and any such Third Party accepts such higher declared value, any valuation placed by the Customer on the goods shall be considered solely for export or customs purposes and the goods will be delivered to the Third Party subject to the limitations of liability set forth herein in paragraphs 10 and 11 below with respect to any claim against the Company and subject to the provisions of paragraph 4 above.

9. Insurance. The Company will make reasonable efforts to effect insurance, fire, theft insurance upon the goods only after specific written instructions have been received and accepted by the Company in sufficient time prior to shipment from the point of origin, and the Customer at the same time states specifically the kind and amount of insurance to be placed. The Company does not undertake or warrant that such insurance can or will be placed. Unless the Customer has its own open marine policy and instructs the Company to effect insurance under such policy, insurance is to be effected with one or more insurance companies or other underwriters to be selected by the Company. Any insurance placed shall be governed by the certificate or policy issued and will only be effective when accepted by such insurance companies or underwriters. Should an insurer dispute its liability for any reason, the insured shall have recourse against the insurer only and the Company shall not be under any responsibility or liability in relation thereto, notwithstanding that the premium upon the policy may not be at the same rates as that charged or paid to the Company by the Customer, or that the shipment was insured under a policy in the name of the Company. Customer agrees to pay all insurance fees and any costs of the Company for arranging the same. If for any reason the goods are held in warehouse, or elsewhere, the same will not be covered by any insurance, unless the Company receives and accepts written instructions from the Customer. Unless specifically agreed in writing, the Company assumes no responsibility to effect insurance on any export or import shipment, which it does not handle. Company shall have no obligation to procure insurance in behalf if Customer except as specifically provided for herein.

10. Limitation of Liability for Loss; Warranty Disclaimer. (a) The Customer agrees that (*) Company shall only be liable for its negligent acts that are the direct and proximate cause of injury to the Customer, including any loss, damage, expense or delay to the goods. Subject to any applicable law, statute, or regulation, such liability shall be limited as follows: (i) If the customer declares a value in advance of the transit and pays applicable additional charges. Company's liability shall be the lesser of the amount of any damage actually sustained or the declared value. (ii) If the Customer does not declare a value and pay applicable additional charges, the Company's liability shall be the lesser of (A) the amount of any damage actually sustained or, (B) 50% of the weight of the actual piece count lost or damaged in pounds multiplied by $.50, whichever is greater. (iii) Customer agrees that the Company shall, in no event, be liable for consequential, indirect, incidental, punitive, statutory or special damages, including, but not limited to, loss of profits, income, utility, interest or loss of market, even if Company has been put on notice of the possibility of such damages. (b) Except as specifically set forth herein, Company makes no express or implied warranties in connection with its services. (c) Other limits of liability may apply to certain transit, international air transit, warehousing, customs entry and other services. These liability limits can be found in the Company's terms and conditions for these services located on the Company's website. In case of transportation involving carriage, any part of which is in Mexico, unless Customer declares a higher value and pays an additional fee established by Company to assume liability up to such value, Company's liability for loss to an amount equivalent to 15 days of the minimum daily wage then current in Mexico City per ton, or the corresponding proportionate part of a metric ton that is damaged or lost. Company will be responsible for any delay, interruption or other failure to perform under this Agreement due to acts beyond its reasonable control, including without limitation, natural disasters (e.g. lightning, earthquakes, hurricanes, floods), wars, riots, terrorist activities, civil commotions, explosions and fires, embargoes, strikes, and labor disputes, and governmental actions.

11. Limitation of Actions. (a) It is the responsibility of the Customer to note in writing any damage or exception to the freight at the time of delivery. Receipt by the person entitled to delivery of the shipment without complaint is prima facie evidence that the same has been delivered in good condition and in accordance with the contract of carriage. (b) Subject to any applicable law, statute or regulation, the Company shall not be liable under paragraph 10 for any claims for: (i) damage or loss discovered by the Customer after delivery and after a clear receipt has been given to the Company, unless a claim is reported in writing to the Company within 15 days after delivery of the shipment with privilege to the Company to inspect the shipment and its contents and to partial and material within 15 days after receipt of such notice; (b) damage, loss, or delay in all other circumstances, unless made in writing and received by the Company within 120 days after the date of acceptance of the shipment by the Company. (c) No claims with respect to a shipment, any part of which is covered by a claim reported to the Company, will be entertained until all transportation charges have been paid. (d) Subject to any applicable law, regulation or treaty, all suits against Company must be filed and properly served on Company as follows: (i) for claims arising out of ocean transportation, within one (1) year from the date of delivery or the date the goods should have been delivered; (ii) for claims arising out of air transportation, within two (2) years from the date of the loss; (iii) for claims arising out of preparation and/or submission of an import entry, within seventy-five (75) days from the date of liquidation of the entry; (iv) for any and all other claims of any other type, within two (2) years from the date of the loss or damage. (e) Claims for overcharges or duplicate billings must be made in writing and received by Company within 180 days from the acceptance date of the shipment by Company or they are time-barred. Lawsuits for overcharges or duplicate billings must be filed no later than one year from the acceptance date of the shipment by Company.

12. Advancing Money. The Company shall not be obliged to incur any expense, guarantee payment or advance any money in connection with the importing, entering, forwarding, transporting, insuring, storing or coopering of the goods, unless monies sufficient to satisfy such expense, payment, or advance is previously provided to the Company by the Customer on demand. The Company shall not be under any obligation to advance freight charges, customs duties or taxes, insurance charges, or other charges owed to third parties by the Customer on any shipment, nor shall any advance by the Company be construed as a waiver of the provisions hereof. In the event that the Company should advance any such monies in any person or entity that subsequently refunds all or any portion thereof to the Customer, and the Customer shall not be reimbursed the Company for these monies, then any portion of the refund corresponding to such unpaid, advanced monies, and any interest paid thereon, shall be deemed the exclusive property of the Company to which the Customer shall have no claim, and which the Customer shall return to the Company immediately upon receipt.

13. Indemnification for Freight, Duties, etc. In the event that a carrier, other person or any governmental agency makes a claim or institutes legal action against the Company for freight, duties, fines, penalties, liquidated damages or other money due arising from a shipment of goods of the Customer, the Customer agrees to indemnify and hold the Company harmless for any amount the Company may be required to pay such carrier, other person or governmental agency together with reasonable expenses, including but not limited to attorney fees, costs, and expenses incurred by the Company in connection with defending such claim or legal action and obtaining reimbursement from the Customer. The confiscation or detention of the goods by any governmental authority shall not affect or diminish the liability of the Customer to the Company to pay all charges or other money due promptly on demand.

14. C.O.D. Shipments. Goods received with Customer's or other person's instructions to "Collect on Delivery" (C.O.D.) by drafts or otherwise, or to collect on any specified terms by time drafts or otherwise, are accepted by the Company only upon the express understanding that it will exercise reasonable care regarding such instructions, and the Company will not be responsible for any refusal by a bank or consignee to pay for a shipment, or for any act, omission, default, suspension, insolvency or want of care, negligence, or fault of any bank, correspondent, carrier or agent, nor for any delay in remittance lost in exchange, or loss during transmission, or while in the course of collection.

15. General Lien on any Property. The Company shall have a general and continuing lien on any and all property (and documents relating thereto) of the Customer, either in its actual or constructive possession, custody or control or en route, for all claims for monies owed to Company, including without limitation charges, expenses or advances incurred by the Company, in connection with any shipments of the Customer, including prior shipments. Company shall provide written notice to Customer of its intent to exercise such lien, the exact amount of monies due and owing, as well as any ongoing storage or other charges. Customer shall notify all parties having an interest in its shipment of Company's rights and/or the exercise of such lien. Unless, within thirty (30) days after receiving the notice of lien, Customer posts cash or a letter of credit at sight, or, if the amount due is in dispute, an acceptable bond equal to 110 percent of the value of the total amount due, in favor of the Company, guaranteeing payment of the monies owed, plus all storage charges accrued or to be accrued, the Company may sell such goods at a public or private sale or auction. Any merchandise, or so much thereof as may be necessary to satisfy such lien, and apply the net proceeds of such sale to the payment of the monies owed to the Company. Any surplus from such sale shall be transmitted to the Customer, and the Customer shall be liable for any deficiency in the sale.

16. Compensation of Company. The compensation of the Company for its services shall be included with and is in addition to the rates and charges of all carriers and other agencies selected by the Company to transport and deal with the goods and such compensation shall be exclusive of any brokerage, commissions, dividends or other revenue received by the Company from carriers, insurers and others in connection with the shipment. Except as otherwise agreed in writing between the Company and Customer, the fuel surcharge on air transportation services will be charged by Company in accordance with the Company's Surcharge Index. In any referral for collection or action against the Customer for monies due to the Company, including but not limited to any action for the enforcement of any provision of the Master Customs Power of Attorney between the Customer and the Company, upon recovery by the Company, the Customer shall pay the Company's reasonable attorney's fees, costs and expenses of collection and/or litigation, including a reasonable attorney's fees, costs and expenses.

17. No Responsibility for Governmental Requirements. It is the responsibility of the Customer to know and comply with the requirements, laws and regulations of each foreign country, as applicable, regarding the merchandise, including, but not limited to, regulations, laws, and requirements pertaining to marking, classification, licensing, transporting hazardous materials, export controls, and any other transporting, importing, or exporting requirements. The Company shall not be responsible for action taken or fines or penalties assessed by any governmental agency against the shipment because of the failure of the Customer to comply with the law or the requirements or regulations of any governmental agency or with a notification issued to the Customer by any such agency.

18. Indemnity against Liability Arising from the Importation of Merchandise. The Customer agrees to indemnify and hold the Company harmless from any claims and/or liability arising from the importation of merchandise and/or any conduct of the Customer which violates any Federal, state and/or other laws or regulations and further agrees to indemnify and hold the Company harmless against any and all liability, loss, damages, costs, claims and/or expenses, including but not limited to reasonable attorney's fees, costs and expenses which the Company may hereafter incur, suffer or be required to pay by reason of such claims and/or liability. In the event that any claim, suit or proceeding is brought against the Company, the Company shall give notice in writing to the Customer by mail at its address on file with the Company. Upon receipt of such notice, the Customer at its own expense, and, at the Company's discretion, in cooperation with the Company's counsel, shall defend against such action and take all steps as may be necessary or proper to prevent the obtaining of a judgment and/or order against the Company.

19. No Duty To Maintain Records For Customer. Customer acknowledges that pursuant to Sections 508 and 509 of the Tariff Act, as amended, (19 U.S.C. sections 1508 and 1509) it has the duty and is solely liable for maintaining all records required under the Customs and/or other Laws and Regulations of the United States; unless otherwise agreed to in writing, the Company shall only keep such records that it is required to maintain by Statute and/or Regulation, but not as a "recordkeeper" or "record-keeping agent" for Customer.

20. Obtaining Binding Rulings, Filing Protests, etc. Unless requested by Customer in writing and agreed to by Company in writing, Company shall be under no obligation to undertake any pre- or post-Customs release action, including, but not limited to, obtaining binding rulings, advising of liquidations, filing of petitions and/or protests, etc.

21. Preparation and Issuance of Bills of Lading. Where Company prepares and/or issues a bill of lading, Company shall be under no obligation to specify thereon the number of pieces, packages and/or cartons, etc.; unless specifically requested to do so in writing by Customer or its agent and Customer agrees to pay for same, Company shall be entitled to rely upon and use the cargo weight supplied by Customer.

22. Shipment Screening. All shipments are, at Company's option or as required by government regulation, be screened and/or inspected without liability to Company. The Customer consents to such screening and understands that this document containing its consent shall be maintained by Company and may be made available to the government regulators upon request.

23. Carmack Amendment Waiver. If the Carmack Amendment ("Carmack") to the Interstate Commerce Act is compulsorily applicable to any stage of the transportation, then the Customer expressly agrees to a waiver of the Carmack provisions to the extent legally permissible. In the event Carmack applies, the Customer must file a written notice of claim for loss, damage or delay no later than nine months after the date the goods are delivered and the Customer denies the claim.

24. No Modification or Amendment Unless Written. These terms and conditions of service may only be modified, altered or amended in writing signed by both Customer and Company; any attempt to unilaterally modify, alter or amend same shall be null and void.

25. Severability. In the event that any Paragraph and/or portion hereof is found to be invalid and/or unenforceable, then in such event the remainder hereof shall remain in full force and effect.

26. Construction of Terms and Venue. These terms and conditions of service shall be construed according to the laws of the State of New York, without giving consideration to principles of conflict of law. The Company and the Customer (a) agree that any legal proceeding relating to the services performed by the Company must be brought only in a court of competent jurisdiction in the State of New York, and (b) irrevocably consent to the jurisdiction of any such court in New York State.

REV 03/17

**FILED: NASSAU COUNTY CLERK 10/09/2020 10:56 AM**
INDEX NO. 611040/2020

NYSCEF DOC. NO. 3
RECEIVED NYSCEF: 10/09/2020

**DB SCHENKER**

Schenker Inc

990 E 233rd St
Carson, CA 90745
United States of America
Phone No.:    +1 310 2213200
Fax No.:      +1 310 5182279
E-mail:
VAT-Id:       13-5619239

American Blast Systems Inc

3101 Villa Way
Newport Beach, CA 92663
United States of America

VAT-Id:    30-0809792

| | |
|---|---|
| Invoice Date: | 15-Nov-2017 |
| Invoice No.: | 200866199 |
| Account No: | 94812112 |
| **Please reference these numbers on all inquiries!** | |

| | |
|---|---|
| Payment due by: | 16-Nov-2017 |
| Page(s): | 1 of 3 |
| Contact Person: | Heidi Sun |
| E-mail: | heidi.sun@dbschenker.com |
| Phone No./ Extension: | +1 310 2213217 |

## Invoice: 200866199

| | | | |
|---|---|---|---|
| STT No.: | 37270003751368 | Place of Receipt: | IEDUB / Dublin |
| Archive No.: | LAXO1170006689 | Port of Loading: | IEDUB / Dublin |
| HB/L No.: | IEDUB4015706754 | Port of Discharge: | USLAX / Los Angeles |
| Vessel / Voyage: | MAERSK NIMES / 1713 | CY/CFS Destination: | USLAX / Los Angeles, CA |
| Shipper: | Diamond Glass | Final Destination: | USLAX / Los Angeles |
| Consignee: | American Blast Systems Inc | ETD / ETA: | 11-Sep-2017 / 01-Nov-2017 |
| Shipper's Reference: | | INCO Terms: | EXW / Los Angeles |
| Consignee's Reference: | | Service Date / Eco Month: | 01-Nov-2017 / 11/2017 |
| Load Type: | FCL | Contra Document No.: | |
| | | Customs Entry Number: | 32217350945 |

| Marks and Numbers | Pieces | Packages | Description of Goods | Gross Weight | Volume |
|---|---|---|---|---|---|
| MRKU3267648 | 1 | 40HQ HC | SLAC = 100 Packages, Loaded into | 21969.000 KGS | 50.000 CBM |
| Seal1: 0251476 | | | 1/40FT HC Shippers load and | | |
| | | | count: | | |
| | | | GLASSWARE | | |
| | | | Seal: 0251476 | | |
| | | | INVOICE NO 359239 | | |

| Charge Description | Base Amount | | Rate of Exchange | Invoice Amount | | Tax Code |
|---|---|---|---|---|---|---|
| Importer Security Filing (10+2) | USD | 45.00 | | USD | 45.00 | A |
| Door to Port ALL IN Charges | USD | 5450.00 | | USD | 5450.00 | A |
| Duties | USD | 3843.25 | | USD | 3843.25 | A |
| Merchandise Processing Fee | USD | 266.26 | | USD | 266.26 | A |
| Harbor Maintenance Fee | USD | 96.08 | | USD | 96.08 | A |
| Customs Clearance | USD | 125.00 | | USD | 125.00 | A |
| CTPAT Fee | USD | 12.95 | | USD | 12.95 | A |
| Courier Fee | USD | 35.00 | | USD | 35.00 | A |
| Overweight Drayage | USD | 486.00 | | USD | 486.00 | A |
| Chassis Usage Charge | USD | 150.00 | | USD | 150.00 | A |
| Insurance Risk Fee | USD | 450.00 | | USD | 450.00 | A |
| Cross-Docking Fee | USD | 750.00 | | USD | 750.00 | A |

| | | | |
|---|---|---|---|
| Total Tax Free Amount: | | USD | 11709.54 |
| Total Taxable Amount: | | | |
| VAT Amount: | | | |
| Total Invoice / Credit Amount: | | USD | 11709.54 |

| Tax Code and Remark | | Net Amount | Tax Amount | % | Total Amount |
|---|---|---|---|---|---|
| A-Tax Free (Outgoing) | USD | 11709.54 | 0.00 | 0.0 | 11709.54 |

If you are the importer of record, payment to the broker will not relieve you of the liability for Custom Charges (duties, taxes, or other

PLEASE REMIT PAYMENT TO:
Schenker Inc., P.O. Box 894219, Los Angeles, CA 90189-4219, United States

995-2-90-1-6.7.1.1-3.6.60.1-2017111151808-DEB2537E604A4EF99BC488B8EB72258 7-2

FILED: NASSAU COUNTY CLERK 10/09/2020 10:56 AM

NYSCEF DOC. NO. 3

INDEX NO. 611040/2020

RECEIVED NYSCEF: 10/09/2020

 **SCHENKER**

| Invoice Date: | 15-Nov-2017 |
|---|---|
| Invoice No.: | 200866199 |
| Account No: | 94812112 |
| Payment due by: | 16-Nov-2017 |
| Page(s): | 2 of 3 |

**Invoice: 200866199**

debts owed Customs) in the event the charges are not paid by the broker. Therefore, if you pay by check, Customs Charges may be paid with a separate check payable to "U.S. Customs and Border Protection" which will be delivered to Customs by the broker.

**FILED: NASSAU COUNTY CLERK 10/09/2020 10:56 AM**

NYSCEF DOC. NO. 4

INDEX NO. 611040/2020

RECEIVED NYSCEF: 10/09/2020

F.M.C. No. 911F

Schenker, Inc. / Los Angeles
1501 Hughes Way Suite 300
Long Beach, CA 90810
Main: 310-952 4400

**DB SCHENKER**

Schenker Contact:
MINERVA GARRIDO    /310-952-4456

INVOICE No.: 2610925594

American Blast Systems Inc

.3101 Villa Way

Newport Beach, CA 92663-3834

| | |
|---|---|
| Date..........: | 11/10/2017 |
| Shipment #...: | 7461701146 |
| S.T.T. #....: | 84070091044384 |
| Flight.......: | KL 8029/08 |
| HAWB Number..: | FS0-0048005 |
| MAWB Number..: | 074-10326153 |
| Dep./Des.....: | BFS  /JFK |
| Pieces.......: | 4 |
| Gross Weight.: | 3750.0      Kg |
| Chargeable Wt: | 3750.0      Kg |
| Entry No.....: | 32217421209 |
| Outside HAWB.: | BFS00048005 |

Bill To: 094812112
American Blast Systems Inc
3101 Villa Way
Newport Beach, CA 92663-3834

Importer:
American Blast Systems Inc
3101 Villa Way
Newport Beach, CA 92663-3834

Shipper:
SWINDELL DRESSLER
5100 CASTEL DR
US-CORAOPOLIS, PA 15108

Ultimate Consignee:
American Blast Systems Inc
.3101 Villa Way
Newport Beach, CA 92663-3834

Nature Of Goods: ballistic window frames

| CHARGES | | INVOICE AMOUNT |
|---|---|---|
| US Customs Duty Subj to Rev. | USD | 6492.98 |
| Merchandise Processing Fee | USD | 394.59 |
| Customs Clearance | USD | 125.00 |
| C-TPAT Security Fee | USD | 12.95 |
| Courier Fee | USD | 35.00 |
| Airport Handling Charges | USD | 562.50 |
| Single Transaction Bond | USD | 665.50 |
| Single Entry Bond Preparation | USD | 50.00 |
| Delivery Charges | USD | 1485.55 |
| Airfreight | USD | 18258.79 |
| Disbursement Fee | USD | 842.49 |
| Terminal Handling Charge Desti | USD | 80.00 |
| TOTAL INVOICE AMOUNT | USD | 29005.35 |

E.X.W.
610215577

If you are importer of record, payment to the broker will not relieve you of the liability for Customs charges (duties, taxes, or other debts owed Customs) in the event the charges are not paid by the broker. Therefore, if you pay by check, Customs charges may be paid with a separate check payable to "U.S. Customs Service" which will be delivered to Customs by the broker.

FUT00161

IMPORTANT: All business undertaken on behalf of this transaction is subject to Schenker, Inc.'s General Terms and Conditions of Service as stated on the reverse side hereof and in accordance to the Tariffs and the most current version of the General Terms and Conditions of Service as stated on the Schenker USA website at www.dbschenkerusa.com.

FILED: NASSAU COUNTY CLERK 10/09/2020 10:56 AM

INDEX NO. 611040/2020

NYSCEF DOC. NO. 4

RECEIVED NYSCEF: 10/09/2020

F.M.C. No. 911F

Schenker, Inc. / Los Angeles
1501 Hughes Way Suite 300
Long Beach, CA 90810
Main: 310-952 4400

**DB SCHENKER**

Schenker Contact:
MINERVA GARRIDO        /310-952-4456

INVOICE No.:2610925594

Date..........:11/10/2017
Shipment #...:7461701146
S.T.T. #.....:84070091044384
Flight.......:KL 8028/08
HAWB Number..:FS0-0048005

American Blast Systems Inc

MAWB Number..:074-10326153
Dep./Des.....:BFS  /JFK

3101 Villa Way

Pieces.......:    4
Gross Weight.:  3750.0    Kg

Newport Beach,CA 92663-3834

Chargeable Wt:  3750.0    Kg
Entry No.....:3221742120S
Outside HAWB.:BFS00048005

Bill To: 094812112                    Importer:
American Blast Systems Inc            American Blast Systems Inc
3101 Villa Way                        3101 Villa Way
Newport Beach,CA 92663-3834           Newport Beach,CA 92663-3834

Shipper:                              Ultimate Consignee:
SWINDELL DRESSLER                     American Blast Systems Inc
5100 CASTEL DR                        3101 Villa Way
US-CORAOPOLIS,PA 15108                Newport Beach,CA 92663-3834
Nature Of Goods: ballistic window frames

If you are importer of record, payment to the broker will not relieve you
of the liability for Customs charges (duties, taxes, or other debts owed
Customs) in the event the charges are not paid by the broker.  Therefore, if
you pay by check, Customs charges may be paid with a separate check payable
to "U.S. Customs Service" which will be delivered to Customs by the broker.

INVOICE DUE DATE    1 DAYS FROM INVOICE DATE
PLEASE REMIT PAYMENT TO :
SCHENKER INC., P.O. BOX 894219, LOS ANGELES, CA 90189-4219

IMPORTANT: All business undertaken on behalf of this transaction is subject to Schenker, Inc.'s General Terms and Conditions of Service as stated on the reverse
side hereof and in accordance to the Tariffs and the most current version of the General Terms and Conditions of Service as stated on the Schenker USA website
at www.dbschenkerusa.com.

**FILED: NASSAU COUNTY CLERK 10/09/2020 10:56 AM**

NYSCEF DOC. NO. 5

INDEX NO. 611040/2020

RECEIVED NYSCEF: 10/09/2020

F.M.C. No. 911F

Schenker, Inc. / Los Angeles
1501 Hughes Way Suite 300
Long Beach, CA 90810
Main: 310-952 4400

Schenker Contact:
MARTIN BARAJAS      /310-952-4424

**DB SCHENKER**

INVOICE No.:2610923652

| | |
|---|---|
| Date.........: | 11/02/2017 |
| Shipment #...: | 7061700995 |
| S.T.T. #.....: | 37270003805368 |
| Flight.......: | |
| HAWB Number..: | - |
| MAWB Number..: | |
| Dep./Des.....: | /LAX |
| Pieces.......: | 0 |
| Gross Weight.: | .0      Kg |
| Chargeable Wt: | .0      Kg |
| Entry No.....: | |
| Outside HAWB.: | |

American Blast Systems Inc

3101 Villa Way

Newport Beach,CA 92663-3834

Bill To: 094812112
American Blast Systems Inc
3101 Villa Way
Newport Beach,CA 92663-3834

Shipper:

Nature Of Goods:

Importer:
American Blast Systems Inc
3101 Villa Way
Newport Beach,CA 92663-3834

Ultimate Consignee:
American Blast Systems Inc
3101 Villa Way
Newport Beach,CA 92663-3834

| CHARGES | | INVOICE AMOUNT |
|---|---|---|
| US Customs Duty Subj to Rev. | USD | 633.85 |
| Merchandise Processing Fee | USD | 43.91 |
| Customs Clearance | USD | 95.00 |
| Single Transaction Bond | USD | 70.00 |
| Single Entry Bond Preparation | USD | 50.00 |
| Airfreight | USD | 6610.57 |
| Airport Handling Charges | USD | 408.84 |
| Cstms Trade Partnr against Ter | USD | 12.00 |
| Delivery Charges | USD | 1300.00 |
| TOTAL INVOICE AMOUNT | USD | 9224.17 |

If you are importer of record, payment to the broker will not relieve you
of the liability for Customs charges (duties, taxes, or other debts owed
Customs) in the event the charges are not paid by the broker.  Therefore, if
you pay by check, Customs charges may be paid with a separate check payable
to "U.S. Customs Service" which will be delivered to Customs by the broker.

INVOICE DUE DATE   1 DAYS FROM INVOICE DATE
PLEASE REMIT PAYMENT TO :
SCHENKER INC., P.O. BOX 894219, LOS ANGELES, CA 90189-4219

IMPORTANT: All business undertaken on behalf of this transaction is subject to Schenker, Inc.'s General Terms and Conditions of Service as stated on the reverse side hereof and in accordance to the Tariffs and the most current version of the General Terms and Conditions of Service as stated on the Schenker USA website at www.dbschenkerusa.com.

FILED: NASSAU COUNTY CLERK 10/09/2020 10:56 AM

INDEX NO. 611040/2020

NYSCEF DOC. NO. 6

RECEIVED NYSCEF: 10/09/2020

F.M.C. No. 911F

Schenker Inc
Risk, Insurance & Trade Advisory
150 Albany Ave
Freeport,NY 11520
US
Schenker Contact:
THOMAS HASSETT      /516-377-3072

**DB SCHENKER**

INVOICE No.:2030034230

| | |
|---|---|
| Date.........: | 12/06/2017 |
| Shipment #...: | 7003704997 |
| S.T.T. #.....: | 84070091772430 |
| Flight.......: | |
| HAWB Number..: | GEN- |
| MAWB Number..: | |
| Dep./Des.....: | /LIT |
| Pieces.......: | 0 |
| Gross Weight.: | .0        Kg |
| Chargeable Wt: | .0        Kg |
| Entry No.....: | |
| Outside HAWB.: | |

American Blast Systems Inc

3101 Villa Way

Newport Beach,CA 92663-3834

Bill To: 094812112
American Blast Systems Inc
3101 Villa Way
Newport Beach,CA 92663-3834

Importer:
American Blast Systems Inc
3101 Villa Way
Newport Beach,CA 92663-3834

Shipper:

Ultimate Consignee:

Nature Of Goods:

| CHARGES | INVOICE AMOUNT | |
|---|---|---|
| Continuous Bond Fee | USD | 250.00 |
| TOTAL INVOICE AMOUNT | USD | 250.00 |

BOND EFFECTIVE DATE:1/2/2018-1/1/2019
CUSTOMS BOND AMOUNT $50,000
CUSTOM BOND # 17C004C13
FOR QUESTIONS PLEASE CONTACT
USA.BONDS@DBSCHENKER.COM
OR (516) 377-3072

INVOICE DUE DATE   1 DAYS FROM INVOICE DATE
PLEASE REMIT PAYMENT TO :
SCHENKER INC., P.O. BOX 2307, CAROL STREAM, IL 60132-2307

IMPORTANT: All business undertaken on behalf of this transaction is subject to Schenker, Inc.'s General Terms and Conditions of Service as stated on the reverse side hereof and in accordance to the Tariffs and the most current version of the General Terms and Conditions of Service as stated on the Schenker USA website at www.dbschenkerusa.com.

 

# NYSCEF - Nassau County Supreme Court
# Confirmation Notice

The NYSCEF website has received an electronic filing on 10/09/2020 10:56 AM. Please keep this notice as a confirmation of this filing.

**611040/2020**
**Schenker, Inc. v. American Blast Systems, Inc.**
**Assigned Judge: None Recorded**

## Documents Received on   10/09/2020 10:56 AM

| Doc # | Document Type |
|-------|---------------|
| 1 | SUMMONS + COMPLAINT |
| 2 | EXHIBIT(S) 1 |
|   | Invoice |
| 3 | EXHIBIT(S) 2 |
|   | Invoice |
| 4 | EXHIBIT(S) 3 |
|   | Invoice |
| 5 | EXHIBIT(S) 4 |
|   | Invoice |
| 6 | EXHIBIT(S) 5 |
|   | Invoice |

## Filing User

Nooshin Namazi | NNamazi@NicolettiHornig.com
88 Pine St Fl 7, New York, NY 10005

## E-mail Notifications

An email regarding this filing has been sent to the following on 10/09/2020 10:56 AM:

**NOOSHIN NAMAZI - NNamazi@NicolettiHornig.com**

---

Maureen O'Connell, Nassau County Clerk - http://www.nassaucountyny.gov/agencies/Clerk/index.html
Phone: 516-571-2660     Website: http://www.nassaucountyny.gov/agencies/Clerk/index.html

**NYSCEF Resource Center, nyscef@nycourts.gov**
Phone: (646) 386-3033 | Fax: (212) 401-9146 | Website: www.nycourts.gov/efile

 

# NYSCEF - Nassau County Supreme Court
## Confirmation Notice

**611040/2020**
Schenker, Inc. v. American Blast Systems, Inc.
Assigned Judge: None Recorded

## Email Notifications NOT Sent

| Role | Party | Attorney |
|------|-------|----------|
| Respondent | American Blast Systems, Inc. | No consent on record. |

* Court rules require hard copy service upon non-participating parties and attorneys who have opted-out or declined consent.

---

Maureen O'Connell, Nassau County Clerk - http://www.nassaucountyny.gov/agencies/Clerk/index.html
Phone: 516-571-2660     Website: http://www.nassaucountyny.gov/agencies/Clerk/index.html

**NYSCEF Resource Center, nyscef@nycourts.gov**
Phone: (646) 386-3033 | Fax: (212) 401-9146 | Website: www.nycourts.gov/efile

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NASSAU**
----------------------------------------------------------------x

SCHENKER, INC.

                  Plaintiff/Petitioner,

    - against -                      Index No. 611040/2020

AMERICAN BLAST SYSTEMS, INC.

                  Defendant/Respondent.

----------------------------------------------------------------x

### NOTICE OF ELECTRONIC FILING
#### (Mandatory Case)
#### (Uniform Rule § 202.5-bb)

**You have received this Notice because**:

    1) The Plaintiff/Petitioner, whose name is listed above, has filed this case using the New York State Courts E-filing system ("NYSCEF"), and

    2) You are a Defendant/Respondent (a party) in this case.

- **If you are represented by an attorney**:
  Give this Notice to your attorney.  (<u>Attorneys</u>: see "Information for Attorneys" pg. 2).

- **If you are not represented by an attorney**:
  **You will be served with all documents in paper and you must serve and file your documents in paper, unless you choose to participate in e-filing.**

  **I**f you choose to participate in e-filing, you **must** have access to a computer and a scanner or other device to convert documents into electronic format, a connection to the internet, and an e-mail address to receive service of documents.

The benefits of participating in e-filing include:

- serving and filing your documents electronically

- free access to view and print your e-filed documents

- limiting your number of trips to the courthouse

- paying any court fees on-line (credit card needed)

**To register for e-filing or for more information about how e-filing works:**

- visit: <u>www.nycourts.gov/efile-unrepresented</u> or
- contact the Clerk's Office or Help Center at the court where the case was filed. Court contact information can be found at <u>www.nycourts.gov</u>

Page 1 of 2                  EFM-1

To find legal information to help you represent yourself visit www.nycourthelp.gov

**Information for Attorneys**
**(E-filing is Mandatory for Attorneys)**

An attorney representing a party who is served with this notice must either:

1) immediately record his or her representation within the e-filed matter on the NYSCEF site www.nycourts.gov/efile ; or

2) file the Notice of Opt-Out form with the clerk of the court where this action is pending and serve on all parties. Exemptions from mandatory e-filing are limited to attorneys who certify in good faith that they lack the computer hardware and/or scanner and/or internet connection or that they lack (along with all employees subject to their direction) the knowledge to operate such equipment. [Section 202.5-bb(e)]

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; e-mail: nyscef@nycourts.gov).

Dated:  October 23, 2020

Val Wamser, Esq.
_____
Name

Nicoletti Hornig & Sweeney
_____
Firm Name

88 Pine Street, 7th Floor
_____

New York, NY 10005
_____
Address

(212) 220-3830
_____
Phone

vwamser@nicolettihornig.com
_____
E-Mail

To:   American Blast Systems, Inc.
_____

3101 Villa Way
_____

Newport Beach, CA 92663
_____

2/24/20

Index  #                          Page 2  of 2                        EFM-1